IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 18, 2010

## STATE OF TENNESSEE v. DEREK ALTON BADGER

**Appeal from the Circuit Court for Bedford County**
**No. 16570     Robert Crigler, Judge**

_____

**No. M2009-01295-CCA-R3-PC - Filed August 25, 2010**

_____

Following a jury trial, the Defendant, Derek Alton Badger, was convicted of one count of aggravated sexual battery, a Class B felony.  <u>See</u> Tenn. Code Ann. § 39-13-504(b).  In this appeal, he contends that the State presented evidence insufficient to convict him.  After our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Jack Dearing, Assistant Public Defender, (at trial); and Michael J. Collins, Assistant Public Defender, Shelbyville, Tennessee, (on appeal) for the appellant, Derek Alton Badger.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General,  for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

During the Defendant's trial, his sister, Cynthia Badger, testified that, in April 2008, she and her three children lived at her mother's house in Bedford County.  Her step-father Michael, her brother Daniel, and the Defendant also lived in the house at the time.  On April 23, 2008, when Ms. Badger was giving her three-year-old daughter, C.F.,[1] a bath, Ms. Badger

_____

[1] In order to protect the identity of minor victims of sexual abuse, it is the policy of this Court to refer to the
(continued...)

began washing her daughter's vaginal area. In response, her daughter said, "[D]on't Mama, it hurts."

Ms. Badger then asked her daughter a series of questions to determine why her vaginal area hurt and whether anyone had touched her. She asked C.F. whether Ms. Badger's step-father Michael or her brother Danny touched her, but C.F. said that neither had. Ms. Badger then asked whether the Defendant had touched C.F., and C.F. responded affirmatively. Ms. Badger testified that C.F. told her that the Defendant touched C.F. with his finger. When she asked her daughter where the Defendant touched her, C.F. pointed to the area between her legs where her vagina was located.

After hearing this, Ms. Badger called the father of her three children, Timothy Finchum, and relayed the information to him. The next morning, April 24, 2008, he picked up the children and took them to his parents' house. That evening, Mr. Finchum took C.F. to the hospital for an examination. He testified that someone from the hospital contacted the Bedford County Sheriff's Department and that he spoke with Detective Captain Rebecca Hord and agreed to bring C.F. to meet with her the next morning.

Detective Captain Hord met with C.F. on April 25, 2008, while her father waited in another room. During the interview, Detective Captain Hord showed C.F. a diagram of a little girl and asked C.F. what she called various body parts. Detective Captain Hord testified that C.F. called the diagram's vaginal area a "wee wee."

On April 28, 2008, Detective Captain Hord met with the Defendant. She stated that she read the Defendant his Miranda[2] rights, that he appeared to understand them, and that he agreed to waive his rights and speak with her. During the Defendant's initial meeting with Detective Captain Hord, he denied the allegation that he touched C.F.'s vagina. He did, however, provide several possible explanations for why C.F. accused him of touching her, including accusing her father, her brother,[3] and a toy dinosaur.

On May 8, 2008, the Defendant met with Detective Captain Hord again; however, this time she was assisted by Tennessee Bureau of Investigation Special Agent Michael Smith. Special Agent Smith testified that he read the Defendant his Miranda rights and that the

---

[1](...continued)
victims by their initials.

[2] See Miranda v. Arizona, 384 U.S. 436 (1966).

[3] C.F. has only one brother; he was seven years old at the time of the trial.

-2-

Defendant acknowledged and waived his rights. Initially, the Defendant repeated his denials and said the allegations were false. During this interview, he speculated that C.F.'s brother could have touched C.F. and also claimed that the Defendant's mother once caught the young boy with his hands down C.F.'s pants. Special Agent Smith also recalled that the Defendant said C.F. was "articulate and has an imagination" and suggested that "she dreamed he touched her down there."

After continued questioning, estimated by Detective Captain Hord as lasting less than an hour, Special Agent Smith told the Defendant that he did not believe his answers were truthful. The Defendant subsequently confessed to touching the outside of C.F.'s vagina, under her clothing, for approximately three to five seconds while they were horse playing and wrestling. He also told them that C.F.'s brother had left the room and that the Defendant and C.F. were alone when he touched her. He never claimed that touching C.F. was an accident. After his confession, the Defendant wrote the following statement:

> On the day of 08 April 12 or the 5 I was watching the kids after school in the evening. [C.F.] was watching TV and me, [C.F.'s brother] and [C.F] was horseplaying and I touch her on the <u>outside of her vagina for 3 to 5 sec</u> (on the inside of her panties) and then I realized what I was doing and stop and ran out side a smoke me a cigarette and started crying and told myself it will never ever happen again and will corroperate and go to counciling. And I also thought suicide.

(emphasis in original).

Discussing the circumstances surrounding the Defendant's confession, Detective Captain Hord stated that she and Special Agent Smith were pleasant toward the Defendant and that the Defendant was pleasant toward them. She also testified that the Defendant's statement was freely given and not forced by either herself or Special Agent Smith. Special Agent Smith testified that the Defendant had a "very good rapport" with them and that neither he nor Detective Captain Hord yelled or raised their voice when they interviewed the Defendant on May 8, 2008. Both Special Agent Smith and Detective Captain Hord stated that they did not make any promises to the Defendant in exchange for his confession. After the Defendant confessed, he said that he felt relieved, and Special Agent Smith testified that the Defendant "relaxed tremendously" after giving his confession.

C.F., four years old at the Defendant's trial, testified that she understood the difference between the truth and a lie and explained, "If you lie you get in trouble." C.F. and the Assistant District Attorney then had the following exchange:

[Assistant District Attorney]: All right. Now, let me ask you, do you have a part of your body that's called a wee wee?

[C.F.]: Uncle Derek touched it with his finger.

[Assistant District Attorney]: Uncle Derek touched your wee wee with his finger?

[C.F.]: Yes.

The Assistant District Attorney then asked C.F. to point to the part of her body that she referred to as her "wee wee," and she pointed between her legs. On cross-examination, she explained that when the Defendant touched her, she was on the floor in the living room watching TV. She recalled that, at the time, no one else was in the living room with her besides the Defendant. She stated that her grandmother was in her bedroom watching a movie and that her Uncle Danny was in his room playing a game.

The Defendant's mother, Barbara Thornberry, testified as a defense witness. She stated that she was the children's primary babysitter and that she never saw the Defendant touch C.F. inappropriately. She asserted that her granddaughter's allegations were impossible because she was always around and would have known about it if the Defendant had touched C.F. Ms. Thornberry claimed that the only time she left her house in the entire month of April 2008 was on April 28th, the day her son was first questioned by the police. She did admit, however, that she would sometimes watch TV in her bedroom, but said that from her bedroom she had a partial view of the living room and could keep an eye on the children. Ms. Thornberry also testified that she believed C.F. would have told her if she was hurt and that C.F. never said anything to her about the Defendant touching her inappropriately.

On cross-examination, Ms. Thornberry said she had never seen the Defendant wrestle with the children, but she said it was possible that she missed it and "might have been doing laundry or in the kitchen." However, she still maintained that she would have known if the Defendant stuck his finger inside her granddaughter's panties. Ms. Thornberry also acknowledged that she has been charged with coercing a witness and was presently accused of trying to get Ms. Badger to lie about where she and her children lived in April 2008.

The Defendant also testified during his trial. He stated that he had never been alone with C.K. and denied the allegations that he touched her inappropriately. Regarding his interview with Detective Captain Hord on April 28, 2008, the Defendant stated that she was pleasant with him and treated him with respect. He also stated that he did not feel stressed out during the initial interview. He acknowledged speculating that C.F. injured herself playing with a toy and that C.F.'s brother might have touched her. He claimed that his step-father once caught C.F.'s brother with his hand down the front of C.F.'s pants.

The Defendant testified that during the interview on May 8, 2008, Special Agent Smith and Detective Captain Hord treated him respectfully and did not raise their voices at him. However, when asked why he confessed to something he did not do, he explained in part, "Well, I have been under a lot of stress ever since, you know, I was hurt, I was being accused of this. I have been under a lot of stress and I don't do well under pressure. I am most likely to be somebody who follows somebody." On cross-examination, the Defendant blamed stress, anxiety, bipolar disorder, adult ADD, and asthma for his confession.

When asked what made him so stressed out that he confessed to a crime he did not commit, he said, "The stress came from when I kept telling them I didn't do it. They kept telling me I was lying." He elaborated:

> I figured I would get help. The way I look at it is this. Okay. This is what I wanted. If I have done something so bad, that is what I told them, if you have done something so bad and you have no acknowledge [sic] of doing it, then that means there is something wrong in your head. Get help. Get me this help I need.

The Defendant said, "They convinced me that I did it," when asked why he needed help if he did not do anything wrong. Regarding the other details in his written statement and confession, such as the wrestling and horseplay, smoking a cigarette, and crying, the Defendant said he made them up: "I had to lie, because I can't sit there and tell a story that didn't happen."

On January 29, 2009, a Bedford County jury convicted the Defendant of one count of aggravated sexual battery. He now appeals.

**Analysis**

The only issue that the Defendant asserts on appeal is that the State presented evidence insufficient to convict him of aggravated sexual battery. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

"Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances . . . (4) The victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "Sexual contact" includes the intentional touching of the victim's genital area. Tenn. Code Ann. § 39-13-501(2), (6).

The State presented testimony from Ms. Badger that C.F., three years old in April 2008, stated that the Defendant touched her vaginal area with his finger. Furthermore, C.F. testified, even without being prompted by a leading question, that the Defendant touched her "wee wee" with his finger. Detective Captain Hord testified that, when she showed C.F. a diagram of a young girl, C.F. called the vaginal area a "wee wee." C.F. gave detailed testimony regarding where she was, and also where other members of the household were, at the time the Defendant touched her inappropriately. During his second interview with police, and after waiving his Miranda rights, the Defendant gave both an oral confession and a written statement admitting that he touched the outside of C.F.'s vagina underneath her panties. Special Agent Smith and Detective Captain Hord both testified that, during the interview that led up to the Defendant's confession, they were respectful, did not raise their voice at him, coerce his confession, or make any promises in exchange for his confession.

**Conclusion**

We conclude that the State presented sufficient evidence for a rational trier of fact to find the essential elements of aggravated sexual battery beyond a reasonable doubt. This issue has no merit. The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE